# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Newrez LLC fka New Penn Financial dba
Shellpoint Mortgage Servicing,

       Plaintiff

v.

Iyad Haddad aka Eddie Haddad, et al.,

       Defendants

Case No.: 2:23-cv-01839-JAD-DJA

**Order Granting in Part
Motions to Dismiss**

[ECF Nos. 18, 20]

This case is a remnant of Nevada's foreclosure crisis in which real-estate investors like Defendant Iyad Haddad and his numerous entities snapped up homes for pennies on the dollar after the owners defaulted on their homeowner-association (HOA) assessments. At the center of this case is the home at 9863 Dublin Valley Street, which Haddad's Dublin Valley Street Trust bought for just $7,700 at an HOA foreclosure sale.[1] The home had been purchased five years earlier with a $340,000 mortgage secured by a deed of trust.[2]

Years of quiet-title litigation in separate suits ended in the determination that this property was bought subject to that deed of trust.[3] But when NewRez LLC dba Shellpoint Mortgage Servicing took steps to foreclose on that long-unpaid mortgage in 2022, Haddad transferred the property to a new entity, which promptly filed for bankruptcy protection,[4] delaying Shellpoint's foreclosure for more than a year. When the sale finally went forward, a different Haddad entity purchased the property at a steep discount.

---

[1] ECF No. 1 at ¶ 34.

[2] *Id*. at ¶ 12.

[3] *Id*. at ¶¶ 46–49.

[4] *Id*. at ¶¶ 70–77.

1          So Shellpoint filed this suit for quiet title, alter ego, fraudulent transfer, tortious

2    interference with contractual relations, unjust enrichment, abuse of process, slander of title, civil

3    aiding and abetting, and an equitable lien.[5]  It asserts these claims against Haddad personally and

4    against allegedly Haddad-controlled entities Resources Group, LLC[6]; 9863 Dublin Valley, LLC;

5    Saticoy Bay LLC; and Saticoy Bay LLC Series 9863 Dublin Valley St.  In two separate filings,

6    the defendants move to dismiss all of Shellpoint's claims except the quiet-title one[7] under

7    Federal Rule of Civil Procedure (FRCP) 12(b)(6).[8]  Because I find that Shellpoint has not pled,

8    and under these circumstances cannot plead, viable claims for fraudulent transfer, tortious

9    interference with contractual relations, or slander of title, I dismiss those claims with prejudice.  I

10   also dismiss Shellpoint's alter-ego and civil-aiding-and-abetting counts to the extent they purport

11   to state stand-alone claims and not merely theories of liability, and I construe its equitable-lien

12   "count" as a requested remedy and not a cause of action.  But I deny the remainder of the

13   motions to dismiss.  So this case moves forward on Shellpoint's claims for quiet title, unjust

14   enrichment, and abuse of process.

15

16

17

18   [5] ECF No. 4 (answer and counterclaim).

19   [6] Resources Group, LLC is sued individually and in its capacity as the trustee of Teal Petals St.
     Trust.

20   [7] Defendant Resources Group, LLC notes that the "Moving Defendants do not contest the
     sufficiency of the claim to Quiet Title" but states that "this cause of action can be consolidated
21   with the Second-Generation Litigation" pending separately in this court "to effectively resolve
     whatever issue may remain . . . ."  ECF No. 20 at 6.  The motion to consolidate those actions was
22   withdrawn, however, *see* ECF No. 34, and the consolidation issue is not briefed here, so I don't
     consider whether it's appropriate.  Should any party believe that consolidation is now warranted,
23   a new motion to consolidate must be filed.

     [8] ECF Nos. 18, 20.

                                        2

**Discussion**

**A.    Alter Ego is a theory of liability, not an independent claim for relief.**

Count two of Shellpoint's complaint is titled "Alter Ego (Against All Defendants)."[9]  In it, Shellpoint alleges that "Haddad owns, controls, influences, and governs all of the Haddad Entities" sued in this case.[10]  "There is such unity of interest and ownership between and among Haddad and the Haddad Entities that they are inseparable from each other, based, upon information and belief, on the defendants' commingling of funds; the Haddad Entities' undercapitalization; and the defendants' unauthorized diversion of funds, treatment of corporate assets, and failures to observe formalities under Nevada law."[11]  Shellpoint concludes that "adherence to the notion of Haddad and the Haddad Entities being separate legal persons would sanction fraud or promote manifest injustice."[12]  So it seeks a declaration that any judgment against one or more of the Haddad defendants is enforceable against Haddad himself and the other Haddad defendants.

Haddad and the Saticoy Bay entities argue that this count must be dismissed because "Paragraph 119 of the complaint alleges that Saticoy Bay and the Series LLC are not separate legal entities under [Nevada Revised Statutes (NRS)] Chapter 86," but in *Federal Housing Finance Agency v. Saticoy Bay LLC*, the Nevada Supreme Court held in 2023 that "a series LLC created pursuant to NRS 86.296 must be sued in its own name for the court to obtain jurisdiction over it, provided the series LLC has observed the corporate formalities provided for in NRS

---

[9] ECF No. 1 at 13.

[10] *Id*. at ¶ 116.

[11] *Id*. at ¶ 117.

[12] *Id*. at ¶ 118.

3

86.296(3)."[13]  But the rule that Haddad references has an explicit carve-out for entities that don't observe the necessary corporate formalities,[14] and Shellpoint has alleged that these didn't,[15] so this claim is not subject to dismissal under FRCP 12(b)(6).

Resources Group, LLC and 9863 Dublin Valley, LLC offer the additional point that this count is "dependent upon the acceptance of Shellpoint's" substantive claims because it's a theory of liability and not itself a cause of action.  So it rises and falls with the other claims.[16]  To the extent that "alter ego" is pled as a separate claim for relief, I dismiss it and construe this "count" instead as merely a separate theory of liability for any claim to which it can apply.

**B.    Shellpoint's fraudulent-transfer claim attempts to fit a square peg into a round hole.**

In count three, Shellpoint sues all defendants under the Nevada Fraudulent Transfer Act, NRS 112.140 et seq.[17]  The transfer at the heart of this claim is Haddad's alleged hot-potato conveyance of the property out of the Teal Petals St. Trust and into the newly created 9863 Dublin Valley, LLC once Shellpoint initiated deed-of-trust foreclosure proceedings in 2022.[18] That transfer kicked off a series of maneuverings by Haddad, using his various entities, to ultimately buy the property at the deed-of-trust foreclosure sale for a depressed price.[19]

Haddad and the Saticoy entities argue that this claim "fails as a matter of law" because NRS 112.160(5) exempts obligations "secured by a valid lien on property of the debtor," and

---

[13] ECF No. 18 at 3 (quoting *Fed. Hous. Fin. Agency (FHFA) v. Saticoy Bay LLC*, 531 P.3d 1232, 1233 (Nev. 2023)).

[14] *FHFA*, 531 P.3d at 1233.

[15] ECF No. 1 at ¶ 117.

[16] ECF No. 20 at 18–19.

[17] ECF No. 1 at 14.

[18] *Id*. at ¶¶ 128–133.

[19] *Id*. at ¶¶ 133–138.

since "the plaintiffs [sic] debt was a secured lien on the property," this claim must be dismissed.[20] But this thinly explained argument misses the mark because NRS 112.160 merely explains how to calculate whether a debtor is insolvent and excludes from that calculation debts secured by a property lien.[21] NRS 112.160(5) has no impact on Shellpoint's fraudulent-transfer claim.

Most of the additional arguments by Resources Group, LLC and 9863 Dublin Valley, LLC are based on a misreading or misstatement of Shellpoint's claim. They note that, for liability to attach under the statute, the fraudulent transfer had to be made by the debtor, and a "noncollusive foreclosure sale or execution of a power of sale" under a deed of trust is excluded.[22] They argue that "[n]one of the defendants, and most certainly not the Moving Defendants, caused the Deed-of-Trust Foreclosure Sale to transpire"—Shellpoint did that—and they argue that Shellpoint's foreclosure fits the exemption.[23] They also contend that this claim should be dismissed for the same reason I dismissed a fraudulent-transfer claim in 2016 *Capital One v. Las Vegas Development Group, LLC*.[24]

My ruling in *Capital One* has no application here. There, I dismissed the lender's fraudulent-transfer claim against the HOA foreclosure-sale purchaser because the transfer it targeted was the HOA foreclosure itself, which was performed by the HOA, not the investor-

---

[20] ECF No. 18 at 4.

[21] *See* Nev. Rev. Stat. § 112.160.

[22] ECF No. 20 at 8 (quoting Nev. Rev. Stat. § 112.170(2)).

[23] *Id*.

[24] *Id*. at 9 (citing *Capital One v. Las Vegas Dev. Grp., LLC*, 2016 WL 3607160 at *3 (D. Nev. June 30, 2016)).

1  purchaser.[25]  Here, Shellpoint's target is not the HOA foreclosure sale but the years-later Teal

2  Petals–Dublin Valley conveyance and the various machinations that followed.

3           The LLCs' final argument is that Shellpoint's fraudulent-transfer claim must be

4  dismissed because the goal of this claim is to obtain delay and other monetary damages caused

5  by their alleged shenanigans, and the statute that authorizes such claims affords only equitable

6  remedies.[26]  They rely on *Cadle Co. v. Woods & Erickson*, in which the Supreme Court of

7  Nevada explained that the statute has only limited application:

8              Creditors do not possess *legal* claims for damages when they are
             the victims of fraudulent transfers.  Instead, creditors have recourse
9            in *equitable* proceedings in order to recover the property, or
             payment for its value, by which they are returned to their pre-
10           transfer position.  Nevada law does not create a legal cause of
             action for damages in excess of the value of the property to be
11           recovered.
             . . .
12           Nevada's fraudulent transfer statute creates equitable remedies
             including avoidance, attachment, and, subject to principles of
13           equity and the rules of civil procedure, injunction, receivership, or
             other relief.  This is in accord with the general rule that "the relief
14           to which a defrauded creditor is entitled in an action to set aside a
             fraudulent conveyance is limited to setting aside the conveyance of
15           the property."  There is generally no personal action against
             transferees unless specially authorized by statute. [27]

16

17  And while the statute authorizes limited monetary awards, "such judgments are only in the

18  amount of either the creditor's claim or the value of the transferred property, whichever is less.

19

20

21

---

22  [25] *Capital One*, 2016 WL 3607160 at *3.

   [26] ECF No. 20 at 10.

23  [27] *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1053 (Nev. 2015) (internal citations
   omitted).

1  The statutory scheme does not allow a creditor to recover an amount in excess of the transferred

2  property's value, or to recover against a nontransferee."[28]

3        But that's exactly what Shellpoint is attempting to do with its fraudulent-transfer claim.

4  It doesn't want the property or to void a transfer of it—Shellpoint is trying to recoup the full

5  value of its contractual rights against the original, defaulting borrower.  As Shellpoint puts it,

6  "[t]he amount of Shellpoint's claim at the time of the deed-of-trust foreclosure totaled

7  $666,448.52," and "Shellpoint seeks a money judgment for the remaining amount of its claim,

8  $239,348.52," which is the amount owed on the original note minus the foreclosure-sale

9  proceeds.[29]  So while Shellpoint's claim targets Haddad and his entities, the claim value it

10 references is the one against the borrower.  As the LLCs put it, this claim "is merely an effort to

11 obtain a deficiency judgment against the defendants" instead of the borrower.[30]  But that's not

12 what Nevada's fraudulent-transfer law is designed to do.  So I grant the LLCs' motion in this

13 regard and dismiss Shellpoint's square-peg-in-a-round-hole fraudulent-transfer claim with

14 prejudice and without leave to amend because amendment would be futile.

15

16 **C.    Shellpoint can't make out a plausible claim for tortious interference with
        contractual relations on these facts.**

17        In count four, Shellpoint alleges a tortious-interference-with-contractual-relations claim

18 against Haddad and the LLCs.[31]  It theorizes that the deed of trust is a contract between itself and

19 the original borrowers, and the same machinations that underlie the fraudulent-transfer claim

20 were designed to—and actually did—disrupt that contract by keeping Shellpoint from pursuing

21 _____

22 [28] *Id.*
   [29] ECF No. 24 at 19.

23 [30] ECF No. 20 at 10.
   [31] ECF No. 1 at 16.

its contractual remedies against those defaulting borrowers.[32]  Haddad and the Saticoy entities argue that "there was no actual disruption of the contract or any resulting damage" because "at all times . . . the deed of trust remained a valid lien on the property until the plaintiff foreclosed."[33]  But this challenge targets the truth of Shellpoint's allegations, not the sufficiency of its pleading and thus goes beyond the reach of this FRCP 12(b)(6) motion.  Shellpoint has alleged that the interference caused it to "incur[] additional foreclosure fees and costs," "additional escrow amounts," and "excessive attorneys' fees and costs, . . . which were not recouped through the Deed-of-Trust Foreclosure Sale."[34]  Because this court must accept these well-pled facts as true for purposes of this motion, this is enough to defeat Haddad and the LLCs' motion to dismiss this claim.

The LLCs' argument is the better one.  They note that a foundational element of a tortious-interference-with-contractual-relations claim is "the defendant's intentional inducement of a third party to breach the contract."[35]  Shellpoint alleges that the third persons here are the borrowers,[36] but none of these defendants induced their breach—it happened long before these defendants came into the picture.[37]  The essence of a tortious-interference-with-contractual-relations claim is the interference with the contractual *relationship*.  As the Supreme Court of Nevada highlighted in *J.J. Industries, LLC v. Bennett*, "[a]t the heart of an intentional

---

[32] *Id*. at ¶¶ 141–160.

[33] ECF No. 18 at 4–5.

[34] ECF No. 1 at ¶¶ 155–158.

[35] ECF No. 20 at 11 (quoting *Kim v. CB Richard Ellis Haw., Inc.*, 288 F. App'x 312, 315 (9th Cir. 2008)(unpub.)).

[36] ECF No. 1 at ¶ 143 ("The Deed of Trust is a valid and existing contract between the Borrowers and Shellpoint.").

[37] *Id*. at ¶¶ 23–24.

interference action is whether plaintiff has proved intentional acts by defendant intended or

designed to disrupt plaintiff's contractual relations."[38]  "Thus, mere knowledge of the contract is

insufficient to establish that the defendant intended or designed to disrupt the plaintiff's

contractual relationship; instead, *the plaintiff must demonstrate that the defendant intended*

*to induce the other party to breach the contract with the plaintiff.*"[39]  Because Shellpoint does

not—and cannot under these circumstances—allege that the defendants induced the borrowers to

breach the deed of trust, I grant the LLCs' motion and dismiss Shellpoint's tortious-interference

claim in its entirety and without leave to amend because amendment would be futile.[40]

**D.    Defendants' attack on Shellpoint's unjust-enrichment claim fails.**

Shellpoint's count five alleges an unjust-enrichment claim.[41]  It theorizes that the

defendants' acts caused them to be unjustly enriched at Shellpoint's expense because, while they

collected rents on this property, the mortgage went unpaid, and Shellpoint came out of pocket for

the taxes, insurance, and other related expenses.[42]  Plus, their machinations succeeded in

Haddad's eventual acquisition of title for $239,348.52 below what was owed on it.[43]

Haddad and the Saticoy entities argue that this claim should be dismissed because

Shellpoint "failed to mitigate its damages."[44]  But the failure to mitigate damages is an

---

[38] *J.J. Industries, LLC v. Bennett*, 71 P.3d 1264, 1268 (Nev. 2003) (cleaned up) (emphasis removed).

[39] *Id*. (emphasis added).

[40] Although the other defendants don't make this argument, the nature of this claim's deficiency renders it implausible against all defendants.

[41] ECF No. 1 at 18.

[42] *Id*. at ¶¶ 162–171.

[43] *Id*. at ¶ 171.

[44] ECF No. 18 at 5–6.

affirmative defense,[45] and any such failure here is not evident on the face of the complaint.  So an FRCP 12(b)(6) dismissal on that basis is not available.[46]

The other LLCs argue that Shellpoint hasn't sufficiently alleged that they received any advantage at Shellpoint's expense.  "It is not clear," they say, that the rents received were a benefit conferred by Shellpoint, and they suggest that the taxes and insurance that Shellpoint paid "[p]resumabl[y] could have been recoverable at the foreclosure sale.[47]  But I find that Shellpoint has sufficiently alleged that it conferred financial benefits on all of the defendants targeted by this claim, either directly or based on its alter ego theory.  So I deny the motions to dismiss the unjust-enrichment claim.

**E.    Shellpoint has pled a viable abuse-of-process claim.**

For its sixth cause of action, Shellpoint claims that the Dublin Valley LLC's bankruptcy filing and the various litigation tactics by it, Haddad, and Resources Group constitute an abuse of the judicial process.[48]  Haddad argues that Shellpoint can't state an abuse-of-process claim over simply filing or maintaining litigation.[49]  The other target defendants add that "the improper act must be so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure," and they argue that Shellpoint's allegations fall short of demonstrating such an act.[50]

---

[45] *Clark Cnty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 95 & n.20 (Nev. 2007).

[46] *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), 'review is limited to the complaint.'" (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).

[47] ECF No. 20 at 14.

[48] ECF No. 1 at 20.

[49] ECF No. 18 at 6.

[50] ECF No. 20 at 15 (internal quotation marks omitted).

1    But Shellpoint has stated sufficient facts to survive this FRCP 12(b)(6) challenge.  It
2  alleges that Haddad and Dublin Valley LLC's goal was to, among other things, "misuse and
3  manipulate the legal process," "interfere with" other pending litigation, "forestall the valid
4  remedy of foreclosure," and allow "the Series LLC to acquire the property for less than the full
5  amount owed and secured by the deed of trust."[51]  This is enough at this point for this claim to
6  proceed.

7  **F.    As a non-titleholder, Shellpoint can't sue for slander of title.**

8    Shellpoint asserts a slander-of-title claim in count seven based on the defendants' alleged
9  failure to release the deed of trust and their listing of the property for sale with the
10  misrepresentation that its title is free and clear of the deed of trust.[52]  Haddad and the Saticoy
11  Bay entities argue that this claim should be dismissed as "convoluted, confusing, and" rife with
12  "incorrect statements of law and fact."[53]  The other LLCs contend that the claim must be
13  dismissed because Shellpoint never held more than a lien on this property, and a slander-of-title
14  claim can only be brought by a title holder.[54]

15    Under Nevada law, a slander-of-title claim requires (1) false and malicious
16  communications, (2) disparaging to one's title in land, (3) causing special damages.[55]  Although
17  Shellpoint had an interest in the property, that interest was a lien; Shellpoint never held title.
18  Shellpoint acknowledges that "there is currently not any basis under Nevada law for Shellpoint

---

[51] ECF No. 1 at ¶ 175 (cleaned up).

[52] *Id*. at 21.

[53] ECF No. 18 at 6.

[54] ECF No. 20 at 17.

[55] *See Higgins v. Higgins*, 744 P.2d 530, 531 (Nev. 1987) (citations omitted).

to assert a slander of title claim,"[56] so I grant the motion to dismiss this claim.  And while Shellpoint asks that the dismissal be without prejudice so that it can reframe the claim as one for defamation,[57] it doesn't need a without-prejudice dismissal to state a new and different claim (if it seeks and obtains leave to amend, of course).  So I grant the motion to dismiss this claim and I do so with prejudice.

**G.    Civil aiding and abetting is a theory of liability, not a cause of action.**

Shellpoint's count eight is entitled "Civil Aiding and Abetting."[58]  It theorizes that all defendants "aided and abetted each other in committing wrongful acts and omissions against Shellpoint," so they are all "liable to Shellpoint as if each one of them had committed all of the wrongful and tortious acts and omissions himself or itself."[59]  Haddad and the LLCs argue that this claim is too ambiguous, warranting dismissal or a more definite statement.[60]  The other defendants argue that this is merely a theory of liability, not itself a claim for relief, and the dismissal of Shellpoint's tort claims requires the court to dismiss this theory, too.[61]  But this count isn't too ambiguous to permit the defendants to respond to its allegations, and Shellpoint's abuse-of-process claim withstands dismissal.  So while I construe this "count" more accurately as merely a theory of liability and not as an independent cause of action, I deny the request to dismiss it entirely.

---

[56] ECF No. 24 at 22.

[57] To the extent that Shellpoint desires to amend its complaint to add a defamation claim, it must file a proper motion for leave to amend and attach a proposed amended complaint.  *See* L.R. 15-1.

[58] ECF No. 1 at 23.

[59] *Id*. at ¶ 198.

[60] ECF No. 18 at 8.

[61] ECF No. 20 at 18.

**H.    An equitable lien is a remedy, not a claim for relief.**

Finally, Haddad and the LLCs move to dismiss Shellpoint's equitable-lien claim, pled in the alternative should its fraudulent-transfer, tortious-interference, and unjust-enrichment damages claims fail. Shellpoint's theory for this claim is that "Defendants benefitted from the Prior Quiet-Title Action, the Second-Generation Litigation, and the Dublin Valley Bankruptcy as shown by their continuing collection of rents and other amounts arising from the Property since the HOA Foreclosure Sale without paying any amounts related to the Deed of Trust."[62] Shellpoint calculates the value of that enrichment at "$239,348.52, the difference between the full amount owed on the Loan at the time of the Deed-of-Trust Foreclosure Sale . . . and the amount of the Series LLC's winning bid," plus "any additional attorneys' fees and costs incurred to enforce the Deed of Trust that were not recouped through foreclosure. . . ."[63] Haddad and the LLCs argue that "[a]n equitable lien is a remedy, not an independent cause of action," so this count should be dismissed.[64] Because the Nevada courts have recognized that an equitable lien is a remedy used in conjunction with substantive claims like unjust enrichment where "legal remedies, such as statutory review are not available or are inadequate,"[65] I grant the motion in part and construe count nine merely as a request for an equitable lien as a remedy for other claims.

---

[62] ECF No. 4 at 19.

[63] *Id*.

[64] ECF No. 18 at 8.

[65] *Holland v. Anthony L. Barney, Ltd.*, 540 P.3d 1074, 1083 (Nev. Ct. App. 2023) (quoting *State, Dep't of Health & Human Servs. v. Samantha Inc.*, 407 P.3d 327, 329 (Nev. 2017)).

**Conclusion**

IT IS THEREFORE ORDERED that the motions to dismiss **[ECF Nos. 18, 20] are GRANTED in part and DENIED in part:**

- **Plaintiff's claims for fraudulent transfer (count three), tortious interference with contractual relations (count four), and slander of title (count seven) are DISMISSED** with prejudice and without leave to amend because amendment would be futile;

- **To the extent that plaintiff pled independent causes of action for alter ego (count two) and civil aiding and abetting (count eight), those counts are dismissed, and the court instead construes those counts as additional theories of liability on any applicable claims**;

- **To the extent that plaintiff pled an independent cause of action for equitable lien (count nine), that count is dismissed, and the court instead construes that count as alternative relief prayed for**; and

- **The motion is otherwise denied.**  This case proceeds on the plaintiff's claims for quiet title, unjust enrichment, and abuse of process.

_____
U.S. District Judge Jennifer A. Dorsey
July 30, 2024